



**FILED**

FEB 2 5 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA,
*ex rel.*
DOLOS ANALYTICS, LLC,
a Delaware limited liability company,

      Plaintiff,

v.

CROSSROADS CARE CENTER OF
FOND DU LAC LLC, an Illinois limited
liability company; CROSSROADS CARE
CENTER OF KENOSHA LLC,
a Wisconsin limited liability company;
CROSSROADS CARE CENTER OF
MAYVILLE, LLC, an Illinois limited
liability company; CROSSROADS CARE
CENTER OF MILWAUKEE, LLC,
a Wisconsin limited liability company;
CROSSROADS CARE CENTER OF
SUN PRAIRIE LLC, an Illinois limited
liability company; CROSSROADS CARE
CENTER OF WEYAUWEGA, LLC,
an Illinois limited liability company; and
CROSSROADS CARE CENTER OF
WOODSTOCK, LLC, an Illinois limited
liability company,

      Defendants.

_____/

Case No.:

**Case No,: 1:25-cv-01964**
**Judge Virginia M. Kendall**
**Magistrate Judge Young B. Kim**
**DIRECT: Qui Tam MJ Cv Cat 3**

### *QUI TAM* COMPLAINT

Plaintiff, the United States of America ("United States"), *ex rel.* Dolos Analytics, LLC, a

Delaware limited liability company ("Relator"), through its undersigned counsel, hereby files this

*qui tam* Complaint against Defendants Crossroads Care Center of Fond du Lac LLC, an Illinois

limited liability company ("Crossroads Fond du Lac"), Crossroads Care Center of Kenosha LLC,

a Wisconsin limited liability company ("Crossroads Kenosha"), Crossroads Care Center of

Mayville, LLC, an Illinois limited liability company ("Crossroads Mayville"), Crossroads Care Center of Milwaukee, LLC, a Wisconsin limited liability company ("Crossroads Milwaukee"), Crossroads Care Center of Sun Prairie LLC, an Illinois limited liability company ("Crossroads Sun Prairie"), Crossroads Care Center of Weyauwega, LLC, an Illinois limited liability company (Crossroads Weyauwega"), and Crossroads Care Center of Woodstock, LLC, an Illinois limited liability company ("Crossroads Woodstock"), (collectively "Defendants"), and in support thereof states as follows:

## INTRODUCTION

1. This *qui tam* action alleges violations of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*. ("FCA") arising from Defendants' fraudulent misrepresentations presented to the United States Small Business Administration ("SBA") and lenders acting on the SBA's behalf, in their applications to obtain and have forgiven millions of dollars in loans under the Paycheck Protection Program.

2. Defendants are part of Crossroads Care Centers, a group of commonly owned and managed health care centers with 14 locations throughout Illinois and Wisconsin.

3. Defendants are affiliated with each other and other parties because they control or have the power to control one another, or a third party or parties controls or has the power to control the Defendants and other parties. Defendants, and their affiliates, employ over 500 employees and generate millions of dollars in annual revenue.

4. Defendants deceived the SBA into lending them and forgiving millions of dollars by knowingly misrepresenting their number of employees combined with their affiliates to con the SBA into accepting their eligibility for loans under the applicable SBA small businesses standards.

2

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this *qui tam* action brought under the FCA, 31 U.S.C. §§ 3279, *et seq.*, pursuant to 28 U.S.C. §§1331 and 1345, and 31 U.S.C. §§ 3732(a) and 3730(b).

6.      Relator is an "original source" and otherwise authorized to maintain this action in the name of the United States and as contemplated by the FCA, 31 U.S.C. §§ 3729-33. Relator has or will make all the necessary voluntary disclosures to the United States and filed all documents necessary with the United States as required by 31 U.S.C. § 3730(b)(2).

7.      There has been no public disclosure of the "allegations or transactions" in this Complaint under Section 3730(e) of the FCA. The specific facts, circumstances, and allegations of Defendants' violations of the FCA have not been publicly disclosed in a civil suit or administrative civil money penalty proceeding in which the United States is already a party. Moreover, Relator is an "original source" of the allegations in this Complaint under 31 U.S.C. § 3730(e) of the FCA, even had such a public disclosure occurred.

8.      The Court has personal jurisdiction over Defendants because 31 U.S.C. § 3732(a) authorizes nationwide service of process, and because Defendants have minimum contacts with the United States, can be found in, and transact or have transacted business in the Northern District of Illinois. Further, the acts proscribed by 31 U.S.C. § 3729(a) and described in this Complaint occurred in the Northern District of Illinois and elsewhere in the United States.

9.      The Defendants are affiliated entities that do business in the Northern District of Illinois and throughout the United States and that either directly or through their affiliates made or caused to be made false statements to the SBA to obtain and have forgiven millions of dollars in PPP loans, and accordingly, are subject to the jurisdiction of this Court.

3

10. Venue lies under 28 U.S.C. § 1391(b), (c) and 31 U.S.C. § 3732(a) because the Northern District of Illinois is a district in which Defendants can be found or transact business, and an act proscribed by 31 U.S.C. § 3729 occurred within this district.

## PARTIES

11. Plaintiff/Relator, Dolos Analytics, LLC, a Delaware limited liability company, brings this action on behalf of the United States, the real party in interest. Relator is a team of data analytics professionals specialized in gathering data from public and private sources and developing models to identify suspicious activity in such data sets. As it pertains to this matter, Relator gathered data related to all applicants of the SBA's Paycheck Protection Program from public and private sources and designed analytical models that identified suspicious activity related to the applicants' data. Thereafter, Relator's professional team manually reviewed the suspicious activity and identified various fraudulent statements made by Defendants to the SBA as set forth herein. Relator has direct and independent knowledge of the factual allegations contained in this *qui tam* Complaint and brings this action as an "original source," as that term is defined by the FCA.

12. Defendant Crossroads Care Center of Fond du Lac LLC is an Illinois limited liability company with its principal place of business located at 5454 W Fargo, Skokie, Illinois 60077. Crossroads Fond du Lac transacts business and has extensive business contacts within Cook County, Illinois. At all times material hereto, Crossroads Fond du Lac directly or indirectly through its subsidiaries and affiliates knowingly misrepresented that it was an eligible small business in its SBA PPP loan application to qualify for, receive, and ultimately have forgiven over four hundred thousand dollars in a PPP loan.

4

13.     Defendant Crossroads Care Center of Kenosha LLC is a Wisconsin limited liability company with its principal place of business located at 5454 Fargo Avenue, Skokie, Illinois 60077. Crossroads Kenosha transacts business and has extensive business contacts within Cook County, Illinois. At all times material hereto, Crossroads Kenosha directly or indirectly through its subsidiaries and affiliates knowingly misrepresented that it was an eligible small business in its SBA PPP loan application to qualify for, receive, and ultimately have forgiven over five hundred thousand dollars in a PPP loan.

14.     Defendant Crossroads Care Center of Mayville, LLC is an Illinois limited liability company with its principal place of business located at 5454 Fargo Avenue, Skokie, Illinois 60077. Crossroads Mayville transacts business and has extensive business contacts within Cook County, Illinois. At all times material hereto, Crossroads Mayville directly or indirectly through its subsidiaries and affiliates knowingly misrepresented that it was an eligible small business in its SBA PPP loan application to qualify for, receive, and ultimately have forgiven over four hundred thousand dollars in a PPP loan.

15.     Defendant Crossroads Care Center of Milwaukee, LLC is a Wisconsin limited liability company with its principal place of business located at 8150 Central Park Avenue, Skokie, Illinois 60076. Crossroads Milwaukee transacts business and has extensive business contacts within Cook County, Illinois. At all times material hereto, Crossroads Milwaukee directly or indirectly through its subsidiaries and affiliates knowingly misrepresented that it was an eligible small business in its SBA PPP loan application to qualify for, receive, and ultimately have forgiven over seven hundred thousand dollars in a PPP loan.

16.     Defendant Crossroads Care Center of Sun Prairie LLC is an Illinois limited liability company with its principal place of business located at 5454 W Fargo Avenue, Skokie, Illinois

60076. Crossroads Sun Prairie transacts business and has extensive business contacts within Cook County, Illinois. At all times material hereto, Crossroads Sun Prairie directly or indirectly through its subsidiaries and affiliates knowingly misrepresented that it was an eligible small business in its SBA PPP loan application to qualify for, receive, and ultimately have forgiven over four hundred thousand dollars in a PPP loan.

17.     Defendant Crossroads Care Center of Weyauwega, LLC is an Illinois limited liability company with its principal place of business located at 5454 W Fargo, Skokie, Illinois 60076. Crossroads Weyauwega transacts business and has extensive business contacts within Cook County, Illinois. At all times material hereto, Crossroads Weyauwega directly or indirectly through its subsidiaries and affiliates knowingly misrepresented that it was an eligible small business in its SBA PPP loan application to qualify for, receive, and ultimately have forgiven over four hundred thousand dollars in a PPP loan.

18.     Defendant Crossroads Care Center of Woodstock, LLC is an Illinois limited liability company with its principal place of business located at 5454 Fargo, Skokie, Illinois 60076. Crossroads Woodstock transacts business and has extensive business contacts within Cook County, Illinois. At all times material hereto, Crossroads Woodstock directly or indirectly through its subsidiaries and affiliates knowingly misrepresented that it was an eligible small business in its SBA PPP loan application to qualify for, receive, and ultimately have forgiven over six hundred thousand dollars in a PPP loan.

**FACTUAL ALLEGATIONS**

I.     **The Paycheck Protection Program**

19.     On March 27, 2020, Congress enacted the Paycheck Protection Program ("PPP") as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in response to

the COVID-19 crisis. Under the PPP, the SBA lent, guaranteed, and ultimately forgave hundreds of billions of dollars to businesses and other organizations.

20. The PPP enabled borrowers to rapidly obtain low-interest loans from private lenders to pay employees and certain expenses to alleviate the unprecedented challenges presented by the COVID-19 crisis.

21. Pursuant to Section 1102 of the CARES Act, the SBA guaranteed 100% of the PPP loans to incentivize private lenders across the country to participate in making such loans expeditiously.

22. Section 1106 of the CARES Act made the loans eligible for partial or full forgiveness subject to the borrower's certification that the funds were used within a specific period to maintain payroll, make rent or mortgage payments, and pay other specified business expenses.

23. To qualify for a first draw PPP loan, the borrower had to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain a PPP loan.

## II.   The PPP First Draw Application Process

24. To expedite the distribution of funds to borrowers, the SBA authorized lenders to rely on the borrowers' certifications regarding their eligibility for the loan, loan amount, use of funds, supporting documentation, and eligibility for loan forgiveness.

25. The SBA delegated authority to private lenders to underwrite and approve the PPP loans. To obtain a PPP first draw loan, an eligible business had to complete and submit a PPP first draw loan application compliant with SBA Form 2483 online through its private lender's platform. The PPP first draw loan application required the borrower to certify its eligibility to obtain the PPP loan, including, *inter alia*, that the borrower, combined with its affiliates, had, i.) 500 or fewer

employees; ii.) met the SBA's industry size standards for the industry in which it operates (if applicable), or iii.) met the SBA's alternative size standard.

    a. The SBA's industry size standards are generally stated in number of employees or average annual receipts, represents the largest size that a business (including its subsidiaries and affiliates) may be to remain classified as a small business for SBA programs.[1]

    b. The SBA's alternative size standard provides that a business can qualify for a PPP loan as a small business if as of March 27, 2020, it (1) had a maximum tangible net worth of not more than $15 million, and (2) had an average net income after Federal income taxes (excluding any carry-over losses) of not more than $5 million for the last two fiscal years before the date of the application.

26. Once the borrower submitted its PPP first draw loan application to a private lender, the lender processed the PPP first draw loan application. If the lender approved the borrower's application, the lender submitted its own application compliant with SBA Form 2484 to the SBA certifying that the borrower certified its eligibility to receive a PPP first draw loan. Upon receipt of the lender's application the SBA approved and guaranteed the loan and assigned it a loan number.

27. Upon receipt of the SBA's guarantee, the lender disbursed the loan to the borrower using its own funds and notified the SBA that the loan was disbursed. Upon receipt of that notification, the SBA paid the lender a processing fee.

---

[1] SBA Table of Small Business Size Standards (available at: https://data.sba.gov/dataset/c17e8870-fa85-48a4-8887-9a51b7503711/resource/d89a5f17-ab8e-4698-9031-dfeb34d0a773/download/sba-table-of-size-standards_effective-august-19-2019_v0.xlsx).

### III.    The PPP Loan Forgiveness Application

28.    Borrowers were eligible to apply for forgiveness of the funds borrowed and spent on specified business expenses during the eight to twenty-four week covered period following each loan disbursement.

29.    Borrowers could apply for loan forgiveness at any time before the loan's maturity date by completing and submitting SBA Form 3508, or one of its variations depending on circumstances. Pursuant to SBA Form 3508, borrowers were required to certify that they were eligible for loan forgiveness. Once the SBA approved the forgiveness application, or a portion thereof, it would remit the forgiveness amount to the lender and the borrower would be released from its obligations under the loan.

### IV.    Crossroads Fond du Lac's Fraudulent PPP Loan Application and Forgiveness Application

30.    Crossroads Fond du Lac submitted a PPP loan application compliant with SBA Form 2483 to Valley National Bank ("Valley National") falsely certifying its eligibility to receive a PPP loan. Crossroads Fond du Lac certified that it had 69 employees and falsely certified that combined with its affiliates, it i.) had 500 or fewer employees; ii.) met the SBA's industry size standards for the industry in which it operates, or iii.) met the SBA's alternative size standard.

31.    Valley National processed and approved Crossroads Fond du Lac's PPP application in the amount of $443,097.00. Relying on Crossroads Fond du Lac's certifications, Valley National submitted a PPP loan application compliant with SBA Form 2484 to the SBA certifying that Crossroads Fond du Lac had certified that it was eligible to receive said PPP loan.

32.    On or about April 27, 2020, and relying on Crossroads Fond du Lac's false certification, the SBA approved and guaranteed the PPP loan and issued it loan number

9

4686087205. Valley National then disbursed the PPP loan to Crossroads Fond du Lac and notified the SBA of such disbursement, at which point the SBA paid the bank a processing fee.

33. Crossroads Fond du Lac applied for forgiveness of its PPP loan by submitting, or causing to be submitted, SBA Form 3508 to the SBA. On or about June 11, 2021, Crossroads Fond du Lac's PPP loan, plus accrued interest, was forgiven in the amount of $448,081.84.

### V. Crossroads Kenosha's Fraudulent PPP Loan Application and Forgiveness Application

34. Crossroads Kenosha submitted a PPP loan application compliant with SBA Form 2483 to Valley National falsely certifying its eligibility to receive a PPP loan. Crossroads Kenosha certified that it had 81 employees and falsely certified that combined with its affiliates, it i.) had 500 or fewer employees; ii.) met the SBA's industry size standards for the industry in which it operates, or iii.) met the SBA's alternative size standard.

35. Valley National processed and approved Crossroads Kenosha's PPP application in the amount of $568,800.00. Relying on Crossroads Kenosha's certifications, Valley National submitted a PPP loan application compliant with SBA Form 2484 to the SBA certifying that Crossroads Kenosha had certified that it was eligible to receive said PPP loan.

36. On or about April 27, 2020, and relying on Crossroads Kenosha's false certification, the SBA approved and guaranteed the PPP loan and issued it loan number 4062597207. Valley National then disbursed the PPP loan to Crossroads Kenosha and notified the SBA of such disbursement, at which point the SBA paid the bank a processing fee.

37. Crossroads Kenosha applied for forgiveness of its PPP loan by submitting, or causing to be submitted, SBA Form 3508 to the SBA. On or about June 11, 2021, Crossroads Kenosha's PPP loan, plus accrued interest, was forgiven in the amount of $575,199.00.

## VI. Crossroads Mayville's Fraudulent PPP Loan Application and Forgiveness Application

38. Crossroads Mayville submitted a PPP loan application compliant with SBA Form 2483 to Valley National falsely certifying its eligibility to receive a PPP loan. Crossroads Mayville certified that it had 67 employees and falsely certified that combined with its affiliates, it i.) had 500 or fewer employees; ii.) met the SBA's industry size standards for the industry in which it operates, or iii.) met the SBA's alternative size standard.

39. Valley National processed and approved Crossroads Mayville's PPP application in the amount of $441,502.50. Relying on Crossroads Mayville's certifications, Valley National submitted a PPP loan application compliant with SBA Form 2484 to the SBA certifying that Crossroads Mayville had certified that it was eligible to receive said PPP loan.

40. On or about April 27, 2020, and relying on Crossroads Mayville's false certification, the SBA approved and guaranteed the PPP loan and issued it loan number 4947277202. Valley National then disbursed the PPP loan to Crossroads Mayville and notified the SBA of such disbursement, at which point the SBA paid the bank a processing fee.

41. Crossroads Mayville applied for forgiveness of its PPP loan by submitting, or causing to be submitted, SBA Form 3508 to the SBA. On or about June 11, 2021, Crossroads Mayville's PPP loan, plus accrued interest, was forgiven in the amount of $446,469.40.

## VII. Crossroads Milwaukee's Fraudulent PPP Loan Application and Forgiveness Application

42. Crossroads Milwaukee submitted a PPP loan application compliant with SBA Form 2483 to Valley National falsely certifying its eligibility to receive a PPP loan. Crossroads Milwaukee certified that it had 87 employees and falsely certified that combined with its affiliates, it i.) had 500 or fewer employees; ii.) met the SBA's industry size standards for the industry in which it operates, or iii.) met the SBA's alternative size standard.

11

43.     Valley National processed and approved Crossroads Milwaukee's PPP application in the amount of $724,035.00. Relying on Crossroads Milwaukee's certifications, Valley National submitted a PPP loan application compliant with SBA Form 2484 to the SBA certifying that Crossroads Milwaukee had certified that it was eligible to receive said PPP loan.

44.     On or about April 27, 2020, and relying on Crossroads Milwaukee's false certification, the SBA approved and guaranteed the PPP loan and issued it loan number 3717827201. Valley National then disbursed the PPP loan to Crossroads Milwaukee and notified the SBA of such disbursement, at which point the SBA paid the bank a processing fee.

45.     Crossroads Milwaukee applied for forgiveness of its PPP loan by submitting, or causing to be submitted, SBA Form 3508 to the SBA. On or about June 11, 2021, Crossroads Milwaukee's PPP loan, plus accrued interest, was forgiven in the amount of $732,180.39.

## VIII.  Crossroads Sun Prairie's Fraudulent PPP Loan Application and Forgiveness Application

46.     Crossroads Sun Prairie submitted a PPP loan application compliant with SBA Form 2483 to Valley National falsely certifying its eligibility to receive a PPP loan. Crossroads Sun Prairie certified that it had 81 employees and falsely certified that combined with its affiliates, it i.) had 500 or fewer employees; ii.) met the SBA's industry size standards for the industry in which it operates, or iii.) met the SBA's alternative size standard.

47.     Valley National processed and approved Crossroads Sun Prairie's PPP application in the amount of $417,037.00. Relying on Crossroads Sun Prairie's certifications, Valley National submitted a PPP loan application compliant with SBA Form 2484 to the SBA certifying that Crossroads Sun Prairie had certified that it was eligible to receive said PPP loan.

48.     On or about April 27, 2020, and relying on Crossroads Sun Prairie's false certification, the SBA approved and guaranteed the PPP loan and issued it loan number

5852717205. Valley National then disbursed the PPP loan to Crossroads Sun Prairie and notified the SBA of such disbursement, at which point the SBA paid the bank a processing fee.

49. Crossroads Sun Prairie applied for forgiveness of its PPP loan by submitting, or causing to be submitted, SBA Form 3508 to the SBA. On or about June 11, 2021, Crossroads Sun Prairie's PPP loan, plus accrued interest, was forgiven in the amount of $421,693.91.

**IX. Crossroads Weyauwega's Fraudulent PPP Loan Application and Forgiveness Application**

50. Crossroads Weyauwega submitted a PPP loan application compliant with SBA Form 2483 to Valley National falsely certifying its eligibility to receive a PPP loan. Crossroads Weyauwega certified that it had 63 employees and falsely certified that combined with its affiliates, it i.) had 500 or fewer employees; ii.) met the SBA's industry size standards for the industry in which it operates, or iii.) met the SBA's alternative size standard.

51. Valley National processed and approved Crossroads Weyauwega's PPP application in the amount of $404,841.00. Relying on Crossroads Weyauwega's certifications, Valley National submitted a PPP loan application compliant with SBA Form 2484 to the SBA certifying that Crossroads Weyauwega had certified that it was eligible to receive said PPP loan.

52. On or about April 27, 2020, and relying on Crossroads Weyauwega's false certification, the SBA approved and guaranteed the PPP loan and issued it loan number 4175217205. Valley National then disbursed the PPP loan to Crossroads Weyauwega and notified the SBA of such disbursement, at which point the SBA paid the bank a processing fee.

53. Crossroads Weyauwega applied for forgiveness of its PPP loan by submitting, or causing to be submitted, SBA Form 3508 to the SBA. On or about June 11, 2021, Crossroads Weyauwega's PPP loan, plus accrued interest, was forgiven in the amount of $409,327.99.

**X.      Crossroads Woodstock's Fraudulent PPP Loan Application and Forgiveness Application**

54.     Crossroads Woodstock submitted a PPP loan application compliant with SBA Form 2483 to Valley National falsely certifying its eligibility to receive a PPP loan. Crossroads Woodstock certified that it had 77 employees and falsely certified that combined with its affiliates, it i.) had 500 or fewer employees; ii.) met the SBA's industry size standards for the industry in which it operates, or iii.) met the SBA's alternative size standard.

55.     Valley National processed and approved Crossroads Woodstock's PPP application in the amount of $611,635.00. Relying on Crossroads Woodstock's certifications, Valley National submitted a PPP loan application compliant with SBA Form 2484 to the SBA certifying that Crossroads Woodstock had certified that it was eligible to receive said PPP loan.

56.     On or about April 27, 2020, and relying on Crossroads Woodstock's false certification, the SBA approved and guaranteed the PPP loan and issued it loan number 3705557206. Valley National then disbursed the PPP loan to Crossroads Woodstock and notified the SBA of such disbursement, at which point the SBA paid the bank a processing fee.

57.     Crossroads Woodstock applied for forgiveness of its PPP loan by submitting, or causing to be submitted, SBA Form 3508 to the SBA. On or about June 11, 2021, Crossroads Woodstock's PPP loan, plus accrued interest, was forgiven in the amount of $618,515.89.

**XI.      The Defendants are not Qualified Small Businesses**

58.     Defendants and other parties are affiliated entities because they control or have the power to control one another, or a third party or parties control or have the power to control Defendants and other parties.

59.     To be eligible small businesses to receive PPP loans, Defendants along with all of their affiliates, had to:

14

a. have 500 or fewer employees;

b. have $30,000,000.00 or less in total annual receipts pursuant to the applicable SBA's industry size standard; or

c. meet the SBA's alternative size standard by having a maximum tangible net worth of not more than $15 million, and an average net income after Federal income taxes of not more than $5 million.

60. Crossroads Care Centers prides itself in being one of the premier healthcare centers for skilled nursing care, post-acute nursing services, and short-term respite care. They offer a wide range of nursing, social and rehabilitative services, and amenities in each of their facilities.

61. Defendants and their affiliated entities employ more than 500 employees, generate well over $30,000,000.00 in annual revenue, and have a tangible net worth in excess of $15 million and an average net income of more than $5 million.

62. Defendants are affiliated entities and the employee headcount that they each disclosed on their PPP applications, without accounting for their other affiliated entities, amounts to 525 employees.

63. Crossroads Fond du Lac was not eligible to receive or have forgiven a PPP loan because combined with its affiliates it has more than 500 employees, exceeds the SBA's industry size standards for the industry in which it operates, and exceeds the SBA's alternative size standard.

64. Crossroads Kenosha was not eligible to receive or have forgiven a PPP loan because combined with its affiliates it has more than 500 employees, exceeds the SBA's industry size standards for the industry in which it operates, and exceeds the SBA's alternative size standard.

65.     Crossroads Mayville was not eligible to receive or have forgiven a PPP loan because combined with its affiliates it has more than 500 employees, exceeds the SBA's industry size standards for the industry in which it operates, and exceeds the SBA's alternative size standard.

66.     Crossroads Milwaukee was not eligible to receive or have forgiven a PPP loan because combined with its affiliates it has more than 500 employees, exceeds the SBA's industry size standards for the industry in which it operates, and exceeds the SBA's alternative size standard.

67.     Crossroads Sun Prairie was not eligible to receive or have forgiven a PPP loan because combined with its affiliates it has more than 500 employees, exceeds the SBA's industry size standards for the industry in which it operates, and exceeds the SBA's alternative size standard.

68.     Crossroads Weyauwega was not eligible to receive or have forgiven a PPP loan because combined with its affiliates it has more than 500 employees, exceeds the SBA's industry size standards for the industry in which it operates, and exceeds the SBA's alternative size standard.

69.     Crossroads Woodstock was not eligible to receive or have forgiven a PPP loan because combined with its affiliates it has more than 500 employees, exceeds the SBA's industry size standards for the industry in which it operates, and exceeds the SBA's alternative size standard.

## XII.     The False Claims Act

70.     The False Claims Act, 31 U.S.C. §§ 3729–3733, is the primary tool with which the United States combats fraud against it. The Supreme Court has held that the False Claims Act's provisions must be construed broadly to reach "all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White*, 390 U.S. 228, 232 (1968).

71.     The FCA provides that a person or entity that knowingly presents or causes to be presented a false or fraudulent claim for approval or makes or causes to be made a false or

fraudulent claim that is material to a false or fraudulent claim is liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted, plus three times the amount of damages which the United States sustains due to the conduct. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.5(a) (adjusting penalties assessed after January 30, 2023 to a minimum of $13,508 and maximum of $27,018).

72. The terms "knowing" and "knowingly" are defined by the FCA to mean that, with respect to the subject false information, a person has actual knowledge of the falsity, acts in deliberate ignorance of the truth or falsity, or acts in reckless disregard of the truth or falsity, and proof of specific intent to defraud is not required. 31 U.S.C. § 3729(b).

73. As defined in the FCA, the term "claim" means any request or demand for money or property that is presented or caused to be presented to the United States; or that is made to a contractor, grantee, or other recipient, if the money is to be spent or used on behalf of the United States or to advance a United States program or interest, so long as the United States provides or has provided any portion of the subject money or property or will reimburse such contractor, grantee, or other recipient for any portion of the subject money or property. *Id.*

74. The term "material" is defined in the False Claims Act to mean having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. *Id.*

## **CAUSES OF ACTION**

### **Count I: False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))**

(Crossroads Fond du Lac)

75. Relator re-alleges and incorporates in this Count I, Paragraphs 1 through 74 of this *qui tam* Complaint.

17

76.     Defendant Crossroads Fond du Lac knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A), specifically, that Crossroads Fond du Lac was eligible for a PPP loan and to have such PPP loan forgiven.

77.     Because of Crossroads Fond du Lac's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

## Count II: False Statements (31 U.S.C. § 3729(a)(1)(B))

### (Crossroads Fond du Lac)

78.     Relator re-alleges and incorporates in this Count II, Paragraphs 1 through 74 of this *qui tam* Complaint.

79.     Defendant Crossroads Fond du Lac knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, and/or to get the United States to pay or approve false or fraudulent claims, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(B).

80.     Because of Crossroads Fond du Lac's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

## Count III: Reverse False Claims (31 U.S.C. § 3729(a)(1)(G))

### (Crossroads Fond du Lac)

81.     Relator re-alleges and incorporates in this Count III, Paragraphs 1 through 74 of this *qui tam* Complaint.

18

82. Defendant Crossroads Fond du Lac knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(G).

83. Because of Crossroads Fond du Lac's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

**Count IV: False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))**

(Crossroads Kenosha)

84. Relator re-alleges and incorporates in this Count IV, Paragraphs 1 through 74 of this *qui tam* Complaint.

85. Defendant Crossroads Kenosha knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A), specifically, that Crossroads Kenosha was eligible for a PPP loan and to have such PPP loan forgiven.

86. Because of Crossroads Kenosha's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

**Count V: False Statements (31 U.S.C. § 3729(a)(1)(B))**

(Crossroads Kenosha)

87. Relator re-alleges and incorporates in this Count V, Paragraphs 1 through 74 of this *qui tam* Complaint.

88. Defendant Crossroads Kenosha knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, and/or to get the United States to pay or approve false or fraudulent claims, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(B).

89. Because of Crossroads Kenosha's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count VI: Reverse False Claims (31 U.S.C. § 3729(a)(1)(G))

(Crossroads Kenosha)

90. Relator re-alleges and incorporates in this Count VI, Paragraphs 1 through 74 of this *qui tam* Complaint.

91. Defendant Crossroads Kenosha knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(G).

92. Because of Crossroads Kenosha's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count VII: False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))

(Crossroads Mayville)

93. Relator re-alleges and incorporates in this Count VII, Paragraphs 1 through 74 of this *qui tam* Complaint.

94. Defendant Crossroads Mayville knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A), specifically, that Crossroads Mayville was eligible for a PPP loan and to have such PPP loan forgiven.

95. Because of Crossroads Mayville's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count VIII: False Statements (31 U.S.C. § 3729(a)(1)(B))

(Crossroads Mayville)

96. Relator re-alleges and incorporates in this Count VIII, Paragraphs 1 through 74 of this *qui tam* Complaint.

97. Defendant Crossroads Mayville knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, and/or to get the United States to pay or approve false or fraudulent claims, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(B).

98. Because of Crossroads Mayville's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count IX: Reverse False Claims (31 U.S.C. § 3729(a)(1)(G))

(Crossroads Mayville)

99. Relator re-alleges and incorporates in this Count IX, Paragraphs 1 through 74 of this *qui tam* Complaint.

100. Defendant Crossroads Mayville knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(G).

101. Because of Crossroads Mayville's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

**Count X: False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))**

(Crossroads Milwaukee)

102. Relator re-alleges and incorporates in this Count X, Paragraphs 1 through 74 of this *qui tam* Complaint.

103. Defendant Crossroads Milwaukee knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A), specifically, that Crossroads Milwaukee was eligible for a PPP loan and to have such PPP loan forgiven.

104. Because of Crossroads Milwaukee's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

**Count XI: False Statements (31 U.S.C. § 3729(a)(1)(B))**

(Crossroads Milwaukee)

105. Relator re-alleges and incorporates in this Count XI, Paragraphs 1 through 74 of this *qui tam* Complaint.

106. Defendant Crossroads Milwaukee knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, and/or to get the United States to pay or approve false or fraudulent claims, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(B).

107. Because of Crossroads Milwaukee's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count XII: Reverse False Claims (31 U.S.C. § 3729(a)(1)(G))

(Crossroads Milwaukee)

108. Relator re-alleges and incorporates in this Count XII, Paragraphs 1 through 74 of this *qui tam* Complaint.

109. Defendant Crossroads Milwaukee knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(G).

110. Because of Crossroads Milwaukee's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count XIII: False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))

(Crossroads Sun Prairie)

111. Relator re-alleges and incorporates in this Count XIII, Paragraphs 1 through 74 of this *qui tam* Complaint.

112. Defendant Crossroads Sun Prairie knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A), specifically, that Crossroads Sun Prairie was eligible for a PPP loan and to have such PPP loan forgiven.

113. Because of Crossroads Sun Prairie's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count XIV: False Statements (31 U.S.C. § 3729(a)(1)(B))

(Crossroads Sun Prairie)

114. Relator re-alleges and incorporates in this Count XIV, Paragraphs 1 through 74 of this *qui tam* Complaint.

115. Defendant Crossroads Sun Prairie knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, and/or to get the United States to pay or approve false or fraudulent claims, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(B).

116. Because of Crossroads Sun Prairie's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count XV: Reverse False Claims (31 U.S.C. § 3729(a)(1)(G))

(Crossroads Sun Prairie)

117. Relator re-alleges and incorporates in this Count XV, Paragraphs 1 through 74 of this *qui tam* Complaint.

118. Defendant Crossroads Sun Prairie knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(G).

119. Because of Crossroads Sun Prairie's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count XVI: False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))

(Crossroads Weyauwega)

120. Relator re-alleges and incorporates in this Count XVI, Paragraphs 1 through 74 of this *qui tam* Complaint.

121. Defendant Crossroads Weyauwega knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A), specifically, that Crossroads Weyauwega was eligible for a PPP loan and to have such PPP loan forgiven.

122. Because of Crossroads Weyauwega's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count XVII: False Statements (31 U.S.C. § 3729(a)(1)(B))

(Crossroads Weyauwega)

123. Relator re-alleges and incorporates in this Count XVII, Paragraphs 1 through 74 of this *qui tam* Complaint.

124. Defendant Crossroads Weyauwega knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, and/or to get the United States to pay or approve false or fraudulent claims, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(B).

125. Because of Crossroads Weyauwega's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

**Count XVIII: Reverse False Claims (31 U.S.C. § 3729(a)(1)(G))**

(Crossroads Weyauwega)

126. Relator re-alleges and incorporates in this Count XVIII, Paragraphs 1 through 74 of this *qui tam* Complaint.

127. Defendant Crossroads Weyauwega knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(G).

128. Because of Crossroads Weyauwega's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

**Count XIX: False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))**

(Crossroads Woodstock)

129. Relator re-alleges and incorporates in this Count XIX, Paragraphs 1 through 74 of this *qui tam* Complaint.

26

130. Defendant Crossroads Woodstock knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A), specifically, that Crossroads Woodstock was eligible for a PPP loan and to have such PPP loan forgiven.

131. Because of Crossroads Woodstock's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count XX: False Statements (31 U.S.C. § 3729(a)(1)(B))

(Crossroads Woodstock)

132. Relator re-alleges and incorporates in this Count XX, Paragraphs 1 through 74 of this *qui tam* Complaint.

133. Defendant Crossroads Woodstock knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, and/or to get the United States to pay or approve false or fraudulent claims, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(B).

134. Because of Crossroads Woodstock's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count XXI: Reverse False Claims (31 U.S.C. § 3729(a)(1)(G))

(Crossroads Woodstock)

135. Relator re-alleges and incorporates in this Count XXI, Paragraphs 1 through 74 of this *qui tam* Complaint.

136.    Defendant Crossroads Woodstock knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(G).

137.    Because of Crossroads Woodstock's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

## PRAYER FOR RELIEF

138.    Wherefore, Relator, demands judgment in its favor as follows:

a.  Against Defendant Crossroads Fond du Lac under Counts I, II, and III under the FCA, for the amount of the United States' damages, trebled as required by law, plus civil penalties in an amount between $13,508.00 and $27,018.00 for each and every false claim as required by law, together with all such further relief may be just and proper;

b.  Against Defendant Crossroads Kenosha under Counts IV, V, and VI under the FCA, for the amount of the United States' damages, trebled as required by law, plus civil penalties in an amount between $13,508.00 and $27,018.00 for each and every false claim as required by law, together with all such further relief may be just and proper;

c.  Against Defendant Crossroads Mayville under Counts VII, VIII, and IX under the FCA, for the amount of the United States' damages, trebled as required by law, plus civil penalties in an amount between $13,508.00 and $27,018.00 for each and every

28

false claim as required by law, together with all such further relief may be just and proper;

d. Against Defendant Crossroads Milwaukee under Counts X, XI, and XII under the FCA, for the amount of the United States' damages, trebled as required by law, plus civil penalties in an amount between $13,508.00 and $27,018.00 for each and every false claim as required by law, together with all such further relief may be just and proper;

e. Against Defendant Crossroads Sun Prairie under Counts XIII, XIV, and XV under the FCA, for the amount of the United States' damages, trebled as required by law, plus civil penalties in an amount between $13,508.00 and $27,018.00 for each and every false claim as required by law, together with all such further relief may be just and proper;

f. Against Defendant Crossroads Weyauwega under Counts XVI, XVII, and XVIII under the FCA, for the amount of the United States' damages, trebled as required by law, plus civil penalties in an amount between $13,508.00 and $27,018.00 for each and every false claim as required by law, together with all such further relief may be just and proper;

g. Against Defendant Crossroads Woodstock under Counts XIX, XX, and XXI under the FCA, for the amount of the United States' damages, trebled as required by law, plus civil penalties in an amount between $13,508.00 and $27,018.00 for each and every false claim as required by law, together with all such further relief may be just and proper; and

h.  Such other relief as this Court may deem just and proper, together with interest and

costs of this action.

## DEMAND FOR JURY TRIAL

Relator demands a jury trial as to all issues so triable.

Dated: February 26, 2025.

Respectfully Submitted,

**ORTEGA GROUP, PLLC**

Dick M. Ortega, Esq.
*Attorneys for Relator*
1108 Ponce de Leon Blvd
Coral Gables, Florida 33134
Telephone: (305) 315-2725
dortega@ortegagroup.law